IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| KEVIN DENEEN MYERS, #1769501 | § | |
| VS. | § | CIVIL ACTION NO. 6:16cv1130 |
| SANDRA BROADUS, ET AL. | § | |

MEMORANDUM OPINION ADOPTING THE REPORT
OF THE UNITED STATES MAGISTRATE JUDGE

Plaintiff Kevin Deneen Myers, a prisoner confined at the Coffield Unit within the Texas Department of Criminal Justice (TDCJ), proceeding *pro se* and *in forma pauperis*, filed this civil rights lawsuit complaining of alleged violations of his constitutional rights. The complaint was referred to the United States Magistrate Judge, the Honorable Judge John D. Love, for findings of fact, conclusions of law, and recommendations for the disposition of the lawsuit.

**I. Myer's Amended Complaint**

In his amended complaint, (Dkt. #29), Myers maintained that several defendants—Nurse Broadus, Dr. Iboni, Dr. Arango, Dr. Al-Dossari, Dr. Tung, Dr. VanKatesan, Dr. Poonawala, and Dr. Singh—have acted with deliberate indifference to his serious medical needs. Specifically, Myers describes incidents that occurred in January and February 2016 wherein he was having difficulty breathing:

> On January 27, 2016, around 6:00am, Plaintiff Kevin Myers approached defendant Sandra Broadus at H.H. Coffield Unit's Medical Department. Plaintiff stated to Defendant Broadus that he was having trouble breathing.
>
> Defendant Broadus then checked Plaintiff's vital signs, [and] afterwards she stated nothing was wrong with Plaintiff. Defendant Broadus then stated to Plaintiff: Do what you would in the free world, "get a drink and sit down somewhere."
>
> On 1-27-16, at or around 7:30am, on the Plaintiff's cell block, Plaintiff approached a correctional officer (name unknown) and told the officer he was short of breath. The

1

correctional officer contacted (by phone) the medical depart. and Plaintiff was taken by stretcher to Coffield Medical Department.

Upon arrival to medical, Plaintiff was examined by Ms. Leslie Gray (LVN). She examined Plaintiff by using a stethoscope. Plaintiff was told by Nurse Gray that he lung was collapsed. A full oxygen mask was placed on Plaintiff's nose and mouth, and Plaintiff was transferred by ambulance to Palestine Medical Center (P.M.C.).

Upon arrival to PMC, Plaintiff was examined, and [an] X-Ray ordered by Defendant Dr. Iboni, and it was determined that Plaintiff's right lung had collapsed. Defendant Dr. Iboni, along with Ms. Deborah Rogers (RN) explained to Plaintiff that in order to repair [a] damaged lung, a chest tube would have to be inserted. Defendant, Dr. Iboni, told Plaintiff that the procedure would be something of normal standard. There would be a small incision on the upper right side of the rib area, then a tube about 1 ½ ft. long would be inserted through the incision down through the ribs, then inserted into the lungs. Normally in and out of the hospital within 2-3 days.

After preparing the area to be inserted, Plaintiff stated he felt he needed something for pain, and was given two pills of morphine and Tylenol. After inserting the chest tube, a cleaning and stitching of the incision was performed. Plaintiff received 3-5 stitches around the inserted tube. Plaintiff was then told by Defendant Dr. Iboni that a hose type tube would exit the incision area and connect to a portable monitor that extends to the side of the bed about 4 ft. At this time Defendant Dr. Iboni stated that Plaintiff would be transferred to University of Texas Medical Branch (UTMB) in Galveston, Texas for recovery.

Around 4:00 pm, Plaintiff was transferred to a portable hospital cart. He was then placed inside an ambulance. The chest tube and monitor are still in place, along with full oxygen mask. After being told by Plaintiff that he was in some discomfort and pain, medical staff inside the ambulance distributed Plaintiff some morphine for pain.

Upon arrival at UTMB, Plaintiff was received by Dr. Marilyn Galindo. Plaintiff stated to Dr. Galindo that he feels as if pins are sticking him in his side and he is short of breath. Plaintiff is then further examined by Dr. Galindo. After examination, Dr. Galindo orders an [X-ray] to be taken of Plaintiff's chest and midsection. Dr. Galindo orders morphine for pain and tells Plaintiff to try and rest, that the X-ray results will be there shortly. Again full oxygen mask is in place.

Shortly thereafter, Dr. Galindo approaches Plaintiff and states to him: "Sir, we have an issue. It seems that the chest tube inserted prior to your arrival is not even in place, therefore another chest tube will have to be inserted." Around 8:00 am on 1-28-16, after chest tube replacement is agreed upon by Plaintiff and Dr. Galindo, Dr. Galindo instructs Plaintiff that the procedure is normal and hospital stay should be 2-3 days.

Now Defendant Dr. Daniel Arango is introduced, along with Dr. Ghannam Al-Dossari (both from cardiothoracic team). And Plaintiff is informed they will be inserting another chest tube and procedure will be done in Plaintiff's room. After being prepared for

procedure, Plaintiff is given 2 tablets each of morphine and Tylenol. Defendant Dr. Arango then removes the existing chest tube with one swift pull while Defendant Dr. Al-Dossari is observing. Once existing tube is removed, the area the tube was in is stitched and taped.

Now a small incision about ½ inch is made around Plaintiff's upper chest area. Defendant, Dr. Arango, now inserts a 1 ½ foot long tube by pushing it through the incision. While Defendant Dr. Al-Dossari is observing, he notices that the chest tube kit that is being inserted has something missing and the procedure is [stopped] to go find another chest tube kit. During this time (almost 20 minutes), Plaintiff has a tube about half way inserted and he complains of hot flashes and high anxiety.

Once Defendant Dr. Al-Dossari returns with the other chest tube hit, Defendant Dr. Arango has to remove the half-inserted chest tube and make another ½ inch incision in Plaintiff's chest area. Now Defendant Dr. Arango inserts the new chest tube down through the chest wall and down the side of Plaintiff's rib area and into the right lung. Next a bandage is applied around the tube that's extracting out of Plaintiff's chest, and the tube is connected to a monitor on the side of Plaintiff's bed. After the procedure was finished, Defendant Dr. Al-Dossari states to Plaintiff that everything seems O.K. and that they would consult the pulmonary critical care team to follow-up.

At around 3:30 pm on 1-28-16, Defendant Dr. Leon Tung [], along with Defendant Dr. Rohit VenKatesan (internal medicine) and John Doe Drs. enter Plaintiff's room. Plaintiff has a full oxygen mask in place. Each Dr. in turn examines Plaintiff by listening with a stethoscope to Plaintiff's heartbeat, and places stethoscope in various places on Plaintiff's back area. Plaintiff states he is sore around the incision area in his chest and has pain in his side, also he is short of breath. Plaintiff is given morphine and Tylenol.

After [conferring] among themselves, the Dr.'s in question order X-Ray of Plaintiff's upper body and midsection. On 2-1-16, Plaintiff complains to Dr. VanKatesan about chest pain and shortness of breath. After continued X-Rays daily by the Defendant Dr. Tung and Dr. VanKatesan, along with other John Doe Dr.'s, Dr. Tung states to Plaintiff that he is being monitored, also that the lung continues to collapse and inflate. This is now around 2-2-16. Around 2-2-16 afternoon, Plaintiff notified a John Doe nurse that he is having trouble breathing. She notifies Dr. Tung. On 2-2-16 p.m., Defendant Dr. Tung stated to Plaintiff that they are going to clamp tube to determine if there is any leak, and X-ray Plaintiff's lung.

Defendant, Dr. [] Poonawala (D.O. internal medicine) enters Plaintiff's room with Dr. Tung on 2-2-16 p.m. During the time which the test tube was clamped, Plaintiff complained of shortness of breath and his anxiety increased. Once Plaintiff complained of shortness of breath, Defendants Dr. Tung and Dr. Poonawala unclamped [the] chest tube and Plaintiff experienced [immediate] relief. Defendants Dr. Tung and Poonawla [conferred] with each other, along with other John Doe Dr.'s, and agreed to have Plaintiff X-rayed twice daily and monitored, with morphine and Tylenol taken as needed. On or around 2-5-16, Defendants Dr. VanKatesan and Dr. Poonawala ordered [a] chest tube to be clamped again to determine if fluid was entering [the] tube. During both times [the]

3

tube was clamped, Plaintiff suffered shortness of breath. On 2-2-16, as well as 2-5-16, Plaintiff experienced shortness of breath, and extreme high anxiety, while the chest tube was clamped.

On 2-6-16, Defendant Dr. Poonawala advised Plaintiff that after viewing X-ray, the lung [] worsened, and a pulmonary disease Dr. would be informed. Now oxygen is increased to ease discomfort. Around 2-6-16 p.m., a Dr. Richard Goodgame (resident Dr.) enters with Defendant, Dr. Gurinder Singh (pulmonary disease) along with other John Doe Dr.'s, and Plaintiff continues to complain of shortness of breath. After X-ray and examination, Defendant Dr. Singh stated that there was air leaking from the chest tube, and the collapsed lung seemed to be worsening. Oxygen was then ordered to be turned up to 5cm due to Plaintiff's shortness of breath.

On 2-7-16 a.m., Defendant Dr. Singh states to Plaintiff that another chest tube may need to be inserted due to collapsing and inflating of [the] lung. Plaintiff will be continually X-rayed. On 2-7-16 p.m., Defendants Dr. Poonawala and Dr. Singh, along with other John Doe Dr.'s, agree that a CT scan should be conducted to determine why the lung continues to collapse and inflate.

On 2-8-16, a Dr. Swiman Shah (D.O. pulmonary disease) enters with resident Dr. William Green. Plaintiff asks Dr. Green what's going on because he is again short of breath. Dr. Green explains to Plaintiff that there is a leak in the existing chest tube and a CT scan will be ordered. Within 2 hrs., after the CT scan, Dr.'s Goodgame, Green, and Shah enter Plaintiff's room, along with other John Doe Dr.'s. Dr. Shah informs Plaintiff that the CT scan revealed that there was a kink in the exiting chest tube, causing the lung to collapse and inflate [and], therefore, another chest tube will have to be inserted.

During the evening of 2-8-16, Dr. Mohamned Zaiden (M.D. Pulmonary disease) enters Plaintiff's room and is said to be the Dr. to insert another chest tube inside Plaintiff's right lung. After an area below Plaintiff's right under arm is prepared, Dr. Zaiden's assistant (an unknown white male) begins to make about a ½ inch incision in the mentioned area. The unknown white male assistant then pushes about a 1 ½ ft. (in length) tube through the incision, guiding it through the right rib area and into Plaintiff's right lung. (Now Plaintiff has 2 chest tubes in place).

On 2-9-16, Dr. Zaiden and Goodgame arrive with several Dr.'s (interns) and ask Plaintiff about his condition, which Plaintiff stated he feels a lot better. Dr. Zaiden orders X-ray, and after review, determines that the chest tube inserted on 1-28-16 could be removed and the 2nd tube could be clamped to determine progress. On or around 2-10-16, the remaining chest tube was clamped and oxygen was removed from Plaintiff's face. After no [complications] or complaints from the Plaintiff, the chest tube inserted on 2-8-16 was removed, and on 2-11-16 Plaintiff was discharged with follow-up information.

(Dkt. #29, pg. 3-13) (second amended complaint, operative complaint).

Myers insisted that Nurse Broadus's failure to diagnose him with a collapsed lung—and her failure to use a stethoscope to discover the collapsed lung—constituted deliberate indifference to his medical needs as well as neglect. Because of her failure to provide a diagnosis, he "had to undergo delayed medical care, emotional pain, and further injury by having to have more than 1 chest tube inserted."

Furthermore, Myers opined that Dr. Iboni's failure to "completely treat" his illness by "neglecting to X-ray after medical procedure" and "take steps to ensure Plaintiff received needed treatment" constitutes deliberate indifference to his medical needs. He complained that Dr. Iboni's failure caused further injury and emotional pain because he had to have another chest tube inserted. Myers also claimed that Dr. Arango failed to both "properly insert [the] chest tube" and ensure what medical equipment was in working order, which constitutes deliberate indifference and cruel and unusual punishment. He insisted that he suffered emotional and mental anguish "for over 10 days while confined to his bed" as a result of these failures.

As for Defendant Dr. Al-Dossari, Myers asserted that he failed to ensure that the equipment worked properly and failed to properly train his personnel. Specifically, he opined that Dr. Al-Dossari failed to ensure that his assistant was "properly trained to perform a service," as he had to undergo pain, suffering, anxiety, and discomfort stemming from his continued shortness of breath as he waited for the proper "assembly" of a chest tube and having to have a second tube inserted.

Myers maintained that Dr. Tung acted with deliberate indifference by failing to acknowledge "serious medical need which bore further investigation." He insisted that Dr. Tung failed to determine that the chest tube had a "kink," which resulted in emotional distress, anxiety, and having to defecate in a chair stool for over ten days.

Turning to Dr. VanKetasan, Myers argued that he failed to diagnose the improper chest tube after several daily X-rays. Due to Dr. VanKetasan's failures, Myers contended that he experienced suffering and pain for over ten days, had to receive another chest tube replacement. Furthermore, Myers complained that Dr. Singh's failure to "notice" his medical needs after observing complications noted in prior examinations constitutes deliberate indifference.

Finally, with respect to Dr. Poonawala, Myers maintained that he failed to "take steps to ensure Plaintiff received needed medical treatment," thereby constituting deliberate indifference to those medical needs. Because of Dr. Poonawala's failure to acknowledge prior X-rays—showing complications with the chest tube—Myers contended that he was forced to suffer from anxiety, emotional distress, and having to be confined to a bed for over ten days while undergoing delayed medical care. Myers seeks compensatory damages from each Defendant and over $240,000 in punitive damages from each Defendant.

## II. Defendants' Motion to Dismiss

Defendants—Dr. Arango, Dr. Al-Dossari, Dr. Tung, Dr. VanKantesan, Dr. Poonawala, and Dr. Singh—filed a single motion to dismiss, (Dkt. #38). They argued that Myers' claims against them are barred by the two-year statute of limitations because the claims relate to allegations and events that occurred more than two years before Myers filed his amended complaint. Defendants also asserted that Myers' claims do not meet the threshold required to establish deliberate indifference and that they are entitled to qualified immunity.

Defendant Broadus filed a separate motion to dismiss, (Dkt. #34). She asserts that any of her alleged conduct does not rise to the level of deliberate indifference and was objectively reasonable. Defendant Broadus further insists that she is entitled to qualified immunity.

**III. Magistrate Judge Love's Report**

On January 3, 2019, Judge Love issued a Report, (Dkt. #39), recommending that Defendants' motions to dismiss be granted and that Myers' complaint be dismissed, with prejudice, for failing to state a claim upon which relief can be granted. Specifically, Judge Love found that Myers' amended complaint, (Dkt. #29), did not relate back to his initial complaint and was, therefore, time-barred. Despite this deficiency, Judge Love analyzed further: Even if Myers' amended complaint was not time-barred, he nonetheless failed to state a claim for deliberate indifference upon which relief can be granted. Myers has filed timely objections, (Dkt. #43).

**IV. Myers' Objections**

In his objections, Myers argues that his amended complaint is not time-barred because he "mentioned" the new Defendants in an earlier-filed amended complaint, (Dkt. #11). Moreover, he maintains that deliberate indifference is evident due to "the proliferation of delay over many weeks raise a issue of material fact." He highlights how he argued that there was a ten-day delay "before it was determined that another chest tube had to be inserted." Myers further opines that "deliberate indifference caused" an easier and less effective treatment—Tylenol and Morphine—to be provided, then Defendants' violated his rights by failing to provide medical care.

The Court notes that, shortly before Plaintiff filed his objections, he filed a response to Defendants' motion to dismiss, (Dkt. #42). In the interests of justice, the Court will address the response. A review of the response shows that Myers basically reiterates the allegations within his complaint and an argument about why the Defendants are not entitled to qualified immunity. The response also denotes Myers' articulation of his own facts and is basically a reiteration of his arguments against Defendant Broadus.

**V. Legal Standards**

The Fifth Circuit has observed that motions to dismiss under Rule 12(b)(6) are "viewed with disfavor and rarely granted." *See Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011). Such motions are generally evaluated on the pleadings alone. *See Jackson v. Procunier*, 789 F.2d 307, 309 (5th Cir. 1986).

Nevertheless, rule 12(b)(6) allows a dismissal if a plaintiff "fails to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). A complaint fails to state a claim upon which relief may be granted where it does not allege sufficient facts which, taken as true, state a claim which is plausible on its face and thus does not raise a right to relief above the speculative level. *See Montoya v. FedEx Ground Packaging System Inc.*, 614 F.3d 145, 149 (5th Cir. 2010) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim has factual plausibility when the pleaded factual content allows the court to draw reasonable inferences that the defendant is liable for the misconduct alleged. *See Hershey v. Energy Transfer Partners, L.P.*, 610 F.3d 239, 245 (5th Cir. 2010); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This plausibility standard is **not** akin to a probability standard; rather, the plausibility standard requires *more than the mere possibility* that the defendant has acted unlawfully. *Bell*, 550 U.S. at 556 (emphasis supplied).

Although all well-pleaded facts are taken as true, the district court need not accept true conclusory allegations, unwarranted factual inferences, or legal conclusions. *See Whatley v. Coffin*, 496 F. App'x 414, 2012 WL 5419531 (5th Cir. Nov. 7, 2012) (citing *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)). Crucially, while the federal pleading rules do not require "detailed factual allegations," the rule does "demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading offering "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" will not suffice, nor

does a complaint which provides only naked assertions that are devoid of further factual enhancement. *Id*.

**VI. Discussion and Analysis**

A review of the record and the pleadings in this case demonstrates that Judge Love's Report is correct. Myers failed to state a claim for deliberate indifference upon which relief can be granted.

*A. Statute of Limitations*

There is no federal statute of limitations for 42 U.S.C. § 1983 actions; the relevant statute of the forum state furnishes the limitations period, but federal law determines the date the accrual commences. *Owens v. Okure*, 488 U.S. 235 (1989). The statute of limitations in Texas for section 1983 actions is two years. *Burrell v. Newsome*, 883 F.2d 416, 419 (5th Cir. 1989); *Pete v. Metcalfe*, 8 F.3d 214, 217 (5th Cir. 1993). Accrual begins "when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Burrell*, 883 F.2d at 418. "Statute of limitations serve as absolute bars to suit." *Nottingham v. Richardson*, 499 F. App'x 368, 375 (5th Cir. 2012).

The Federal Rules of Civil Procedure permit an amendment to a complaint to relate back to the date the original complaint was filed. *See* Fed. R. Civ. P. 15(c). Crucially, however, the rule "is meant to allow an amendment changing the name of a party to relate back to the original complaint **only if the change is the result of an error, such as a misnomer or misidentification**." *See Miller v. Mancuso*, 388 F. App'x 389, 391 (5th Cir. 2010) (unpublished) (emphasis added) (quoting *Jacobsen v. Osborne*, 133 F.3d 315, 320 (5th Cir. 1998) (citation omitted)). The Fifth Circuit further held that "failing to identify individual defendants cannot be characterized as a mistake." *Jacobsen*, 133 F.3d at 320.

9

Judge Love found that Myers' amended claims against Defendants Arango, Al-Dossari, Tung, VanKetasan, Poonawala, and Singh are barred by the statute of limitations because his amended claims—filed in October 2018—do not relate back to his original complaint, which was timely filed in August 2016. Specifically, according to his own timeline of events, Myers' claims against these Defendants accrued on or before February 7, 2016. A review of Myers' original complaint, (Dkt. #1), shows that he initially sued Defendants Broadus, Iboni, and Aya. Myers filed a motion to amend his complaint, (Dkt. #28), indicating that he incorrectly named Defendant Aya. In his motion to amend, he identified the new Defendants—explaining that he discovered them **only** upon review of his medical records submitted by the wrong Defendant. This Court granted the motion to amend—explaining that it was the operative pleading and superseded previous amendments—and recommended that Defendant Aya be dismissed as a defendant, (Dkt. #33).

However, Myers' amended complaint, (Dkt. #29), identified new Defendants not previously raised in his initial complaint: Defendants Arango, Al-Dossari, VanKatesan, Poonawala, and Singh. While his amended complaint concerned the same issues presented in his initial complaint, Myers explained that he discovered the correct defendants only after recently receiving medical records, which cannot be characterized as a "mistake." *See Ultraflo Corp. v. Pelican Tank Parts, Inc.*, 926 F.Supp.2d 935, 947 (S.D. Tex.—Houston 2013) ("A failure to name the correct defendant due to a lack of knowledge of the proper party is not a mistake and will not allow a plaintiff to avail itself of the relation back doctrine.") (citation omitted).

Because such discovery was not a result of error or misidentification—as Myers added new defendants that he did not know were defendants when he filed his initial complaint—Judge Love properly found that his October 2018 amended complaint does not relate back to his initial

10

complaint and is thus time-barred. *See, e.g.*, *Barrow v. Wethersfield Police Dept.*, 66 F.3d 466, 470 (2nd Cir. 1995) ("We are compelled to agree with our sister circuits that Rule 15(c) does not allow an amended complaint adding new defendants to relate back if the newly-added defendants were not named originally because the plaintiff did not know their identities."); *Wilson v. U.S. Government*, 23 F.3d 559, 563 (1st Cir. 1994) ("Put another way, Rule 15(c)(3) permits an amendment to relate back only where there has been an error made concerning the identity of the proper party and where the party is chargeable with knowledge of the mistake, but it does not permit relation back where, as here, there is a lack of knowledge of the proper party.") (internal citation and quotations omitted).

On objection, Myers asserts that he was "aware that there were other Defendants involved," and that they were "mentioned" in his first amended complaint, (Dkt. #11). A review of that filing shows that Myers specifically named Defendants Broadus, Iboni, and Aya as parties to his lawsuit. While he mentions other medical providers throughout his pleading—particularly in the facts section—he did not list or name them as Defendants. Providing the Court with named medical providers, as Myers did in his first amended complaint in an effort to describe the facts of his case, does not make them Defendants. Myers readily admits on objection that he merely "mentioned" the new Defendants. Accordingly, Judge Love correctly determined that Myers' second amended complaint, (Dkt. #29), the operative pleading in this case, did not relate back and was thus barred by the statute of limitations. Myers' objection on this point is without merit.

Ultimately, however, the statute of limitation issue does not matter in this case. As Judge Love found, Myers failed to state a claim for deliberate indifference against any Defendant he named.

*B. Deliberate Indifference*

Deliberate indifference to a prisoner's serious medical needs constitutes an Eighth Amendment violation and states a cause of action under section 1983. *See Jackson v. Cain*, 864 F.2d 1235, 1244 (5th Cir. 1989). In *Farmer v. Brennan*, 511 U.S. 825, 835 (1994), the Supreme Court noted that deliberate indifference involves more than mere negligence. The Court concluded that "a prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; . . . the official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Id*. at 837.

The Fifth Circuit has discussed the high standard involved in demonstrating deliberate indifference as follows:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by medical personnel does not suffice to state a claim for deliberate indifference. *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). Rather, the plaintiff must show that the officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Id*. Furthermore, the decision whether to provide additional treatment "is a classic example of a matter for medical judgment." *Estelle*, 429 U.S. at 107. And, the "failure to alleviate a significant risk that [the official] should have perceived, but did not" is insufficient to show deliberate indifference. *Farmer*, 511 U.S. at 838.

*Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). In the medical care context, "[u]nsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does an inmate's disagreement with his medical treatment, absent exceptional circumstances." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006). Moreover, "medical records of sick calls, examinations, diagnosis, and medications may rebut an inmate's allegations of deliberate indifference." *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995).

Here, as Judge Love repeatedly found and explained in his Report, Myers' own words described in his amended complaint and outlined above reveal that none of the Defendant doctors or nurses acted with deliberate indifference to his medical needs. His own articulation of the facts illustrates that medical personnel neither refused to treat him, ignored his complaints, intentionally treated him incorrectly, nor showed any wanton disregard for his medical needs; in fact, Myers' own words show the very opposite.

In his first objection to Judge Love's deliberate indifference analysis, Myers insists that the ten-day delay before "it was determined that another chest tube had to be inserted" constitutes deliberate indifference. However, a "delay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference, which results in substantial harm." *See Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993). Here, having found that none of the Defendants acted with deliberate indifference to Myers' medical care, this objection is meritless.

Furthermore, Myers argues on objection that "deliberate indifference caused" less effective medications—Tylenol and Morphine—to be provided. He claims that this shows a violation of the Eighth Amendment.

However, this cannot constitute deliberate indifference by any means: Providing pain medications in response to a prisoner's pain and medical care is antithetical to any notion that medical personnel refused to treat him, ignored his complaints, or evinced any wanton or intentional disregard for his medical care. This is a disagreement with medical treatment provided and Myers does not have a constitutional right to pain medication of his choice. *See Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1992) ("Norton also alleges that medical personnel should have attempted different diagnostic measures or alternative methods of treatment. Disagreement

13

with medical treatment does not state a claim for Eighth Amendment indifference to medical needs."). This objection must be overruled.

**VII. Conclusion**

Ultimately, regardless of any issues with the statute of limitations, Myers' own articulation of the facts surrounding his medical care—that he suffered in the hospital for ten days due to a collapsed lung and several unsuccessful attempts to insert a successful chest tube to heal his lung—demonstrate that several doctors and nurses treated him, provided medical care, and did not act with deliberate indifference.

While Myers' experience at the hospital was certainly uncomfortable and sometimes painful, he describes a series of events wherein he was examined by prison officials, transported to the hospital, treated by several doctors, given medications, monitored daily, and so forth. His articulation of events refutes any argument that the Defendants refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. *See Domino*, 239 F.3d at 756. As Judge Love recommended, Myers' civil rights complaint should be dismissed because he failed to state a claim for deliberate indifference upon which relief can be granted.

The Court has conducted a careful *de novo* review of the record and the Magistrate Judge's Report. *See* 28 U.S.C. § 636(b)(1) (District Judge "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendation to which objection is made."). Upon such *de novo* review, the Court has determined that the Report of the Magistrate Judge is correct and Plaintiff's objections are without merit. Consequently, it is

**ORDERED** that the Report of the United States Magistrate Judge, (Dkt. #39), is **ADOPTED** as the opinion of the District Court. Plaintiff's objections, (Dkt. #43), are overruled. It is also

**ORDERED** Defendants' motions to dismiss, (Dkt. #'s 34, 38), are **GRANTED**. Plaintiff's civil rights action is hereby **DISMISSED**, with prejudice, for failure to state a claim upon which relief can be granted. Finally, it is

**ORDERED** that all motions which may be pending in this action are hereby **DENIED**.

So **ORDERED** and **SIGNED February 22, 2019.**

_____
Ron Clark, Senior District Judge